UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

ROBERT L. CONNOLLY, II,              )
                                     )
          Plaintiff                  )
                                     )
          v.                         )       Case No. 4:08 cv 31
                                     )
MICHAEL J. ASTRUE, Commissioner      )
of Social Security,                  )
                                     )
          Defendant                  )

OPINION AND ORDER

This matter is before the court on the Petition for Judicial
Review of the Decision of the Commissioner of Social Security
filed by the claimant, Robert L. Connolly, on May 5, 2008.  For
the reasons set forth below, the decision of the Commissioner is
**REVERSED** and **REMANDED**.

Background

Robert L. Connolly applied for Disability Insurance Benefits
and Supplemental Security Income on October 26, 2003, alleging a
disability onset date of February 5, 1998.  (Tr. 107)  Connolly
asserted that he suffered from degenerative disc disease,
osteoarthritis, degenerative eye disease, and curvature of the
spine.  (Tr. 107)  Finding Connolly not disabled, the claim was
denied initially and upon reconsideration.  (Tr. 48, 53)  On June
14, 2004, Connolly requested a hearing before an Administrative
Law Judge.  (Tr. 56)  A hearing before ALJ Steven E. Davis was
scheduled for April 7, 2005, (Tr. 275) however Connolly decided
not to proceed without legal representation, and the hearing was

postponed. (Tr. 276) On April 4, 2005, Ralph Robinson was appointed as the attorney for Connolly. (Tr. 45)

The second hearing took place before ALJ Davis on November 17, 2006. (Tr. 40, 280) Following the ALJ's issuance of an unfavorable decision on March 7, 2007, (Tr. 20) Connolly filed a Request for Review by the Appeals Council on March 15, 2007. (Tr. 66) The Appeals Council granted the Request for Review and on June 13, 2007, remanded Connolly's case to the ALJ. (Tr. 61) The Appeals Council found insufficient vocational evidence on the extent to which Connolly's limitations affected his ability to perform his past relevant work or any other suitable work and directed the ALJ to obtain evidence from a vocational expert to clarify the effect of the limitations on Connolly's occupational base. (Tr. 64)

The next hearing occurred before ALJ Davis on October 16, 2007. (Tr. 11, 295) On January 25, 2008,[1] the ALJ issued a decision determining that, although Connolly had a severe impairment, he lacked the significant and persistent neurological abnormalities required under Listing §1.04. (Tr. 34) The ALJ further determined there was no evidence that Connolly suffered an inability to ambulate effectively, which is required by Listing §1.02. (Tr. 34) The ALJ concluded that Connolly retained the capacity to perform light or sedentary work and that Connolly could perform his past relevant work as a telemarketer and as a

---

[1] Due to a typographical error, the ALJ's second decision in the record shows an issue date of January 25, 2007, rather than the actual issue date of January 25, 2008.

telephone solicitor.  (Tr. 34-38)  The ALJ also found there were a significant number of other jobs in the national economy that Connolly could perform.  (Tr. 38)  Following this decision, Connolly filed a Request for Review by the Appeals Council on February 19, 2008.  (Tr. 10)  On April 21, 2008, the Appeals Council denied the Request for Review.  (Tr. 6-9)  This denial made the ALJ's decision the final decision of the Commissioner of Social Security.  20 C.F.R. §422.210(a).  Connolly subsequently filed a timely complaint in this court seeking review of the Commissioner's decision under 42 U.S.C. §405(g).

Connolly was born on February 5, 1958, making him 49 years old at the time of his last hearing before the ALJ.  (Tr. 70, 281)  On the date of his alleged onset of disability, he was 40 years old and had an 11th grade education.  (Tr. 113, 303)  From 1988 to 1990, Connolly worked as a telemarketer.  (Tr. 108)  From 1990 to 1993, Connolly worked as an owner of an antique shop.  (Tr. 108)  From 1993 to 1996, Connolly worked as a gas station attendant.  (Tr. 108)  According to his disability report filed on October 23, 2003, Connolly held this position for the longest period of time.  (Tr. 108)  This position required him to walk, stand, stoop, kneel, handle big objects, and write or handle small objects throughout a 12 hour workday.  (Tr. 108)  From 1997 to 1998, Connolly's last time of employment, he worked as a press operator.  (Tr. 108)

From February 1998, the alleged onset of Connolly's disabil-ities, through 2003, Connolly saw Dr. Michael Haville, a chiro-

3

practor, for periodic back adjustments. (Tr. 109)[2] On March 7, 2000 and August 20, 2003, Dr. Haville completed medical condition forms for food stamps and TANF on behalf of Connolly. (Tr. 126, 127) The first evaluation indicated that Connolly would experience more pain and stiffness in his back from overexertion, that he had limitations on standing and walking, and that he could not carry weight greater than ten pounds. (Tr. 127) The later evaluation explained that, due to chronic degeneration of the spine, Connolly had to limit standing and walking to ten to 15 minute increments and had other limitations on lifting and grasping. (Tr. 126)

From April 2000 to August 2003, Connolly was incarcerated in the Plainfield Correctional Facility for failure to pay child support, and the facility did not produce any medical records. (Tr. 109, 289)

On October 6, 2003, Connolly went to the VA Medical Center in Indianapolis requesting treatment for chronic back pain. (Tr. 234) The VA Medical Center performed x-rays on Connolly's spine and found a fusion of posterior spinous processes, possibly facets of C2 and C3, and some lumbar spine straightening that was likely attributable to muscle spasm. (Tr. 144-45, 223-24) According to Dr. Donald Schauwecker, a VA physician, this diagno-

---

[2] Connolly wrote in his Disability Report that he saw Dr. Haville for the first time in February 1998 and had last seen him in October 2003. (Tr. 109) There are also two Statements of Medical Condition for the Food Stamp and Temporary Assistance for Needy Families Program in the record which were completed by Dr. Haville for Connolly on March 7, 2000 and August 20, 2003. (Tr. 126, 127) However, on December 1, 2003, Dr. Haville indicated in a letter to a disability reviewer in this case that he had "not examined this patient for 7(+) years," and could not "render an objective opinion of his current health/functional status at this time." (Tr. 117)

sis could be responsible for Connolly's back pain.  (Tr. 144, 223)

On November 17, 2003, Dr. Elizabeth Berhane, another VA physician, gave Connolly a complete medical exam at the VA Medical Center and noted Connolly had slightly tense paraspinal muscles.  (Tr. 186)  However, everything else appeared normal. (Tr. 186)  She also noted that Connolly had degenerative arthritis and dyspepsia. (Tr. 129)

On December 17, 2003, Dr. R. Newton, a physician Connolly saw at the VA Medical Center, performed an examination of Connolly for the Work-Comp Management Services, Inc.  (Tr. 212)  In a summary of Connolly's medical history, Dr. Newton explained that he was diagnosed with osteoarthritis in his hands, knees, and ankles in 1999, scoliosis in 1981, colitis in 1987, and degenerative eye disease bilaterally in 1973.  (Tr. 212)  Dr. Newton noted Connolly has three fused vertebras at C4, C5, and C6, had his right retina reattached at age four, had a loss in his peripheral vision, and underwent three left knee surgeries. (Tr. 212)  Dr. Newton also stated Connolly could not stand, sit, or walk for very long, or grab objects due to his arthritis. (Tr. 212)  Dr. Newton further observed that Connolly was not using an assistive device and was able to get on and off the examination table without difficulty or assistance.  (Tr. 213) Dr. Newton observed that Connolly was unable to walk on heels and toes and was unable to bend all the way over and get back up. (Tr. 213)  He also performed a straight-leg raising test which

came out positive.  (Tr. 214)  Dr. Newton's overall assessment
listed the following abnormalities: degenerative disease of the
cervical and lumbar spine; scoliosis; osteoarthritis in hands,
knees, and ankles; colitis; degenerative disease of the eyes
bilaterally; and tobacco abuse.  (Tr. 214)  Dr. Newton recom-
mended further evaluation of his spine and osteoarthritis.  (Tr.
214)

     On January 12, 2004, Dr. T. Crawford, a state agency physi-
cian, completed a Physical Residual Functional Capacity Assess-
ment.  (Tr. 204)  Dr. Crawford concluded that Connolly could lift
or carry 20 pounds occasionally, lift or carry ten pounds fre-
quently, stand, walk, or sit for a total of about six hours in an
eight-hour workday, and push and pull in an unlimited capacity.
(Tr. 205)  Dr. Crawford determined that Connolly had a decreased
range of motion throughout the cervical and lumbar spine and
could not walk on heels and toes but that Connolly did have
normal gait and station and normal strength and tone throughout.
(Tr.  205)  Dr. Crawford further concluded that Connolly had
occasional limitations in climbing, balancing, stooping, kneel-
ing, crouching, and crawling but that he had no manipulative,
visual, communicative, or environmental limitations.  (Tr. 206-
208)  Dr. Crawford found these limitations to be consistent with
both Connolly's contentions regarding the nature and severity of
his symptoms and the overall medical evidence in the file.  (Tr.
209)  On April 16, 2004, state agency physician A. Dobson,
reviewing Connolly's records on reconsideration, agreed with Dr.

Crawford's conclusions. (Tr. 47, 211)

On May 4, 2004, the VA Medical Center performed an MRI on Connolly's spine. (Tr. 118, 143, 271) Dr. Andrew Kalnin noted there was mild multilevel degenerative disc disease throughout Connolly's lumbar spine and a small left-side disc protrusion at the L4-L5 level, which was likely causing some mass effect on the left L5 nerve root at the left lateral recess. (Tr. 118, 143, 271)

On September 27, 2004, the VA Medical Center performed another MRI on Connolly's spine. (Tr. 138, 140, 257) According to Dr. Mariathea Dolar, the tests found mild foraminal stenosis at C3-C4, a broad-based disc bulge at C5-C6 without evidence of stenosis, a broad-based bulge at T6-T7, and focal left central protrusions at T8-9 and T10-11. (Tr. 139, 141, 258) On this same day, Dr. Scott Purvines also examined Connolly and recommended that he not perform any labor that required pulling, pushing, or lifting heavy objects or that required repetitive hand or arm movements. (Tr. 120, 175) The doctor also noted that surgery would not be an option for Connolly's back. (Tr. 175)[3]

On November 15, 2004, and January 31, 2005, Connolly was scheduled for two appointments at the pain clinic, but he failed to show due to another incarceration. (Tr. 154, 173)

On April 19, 2006, the VA Medical Center gave Connolly an x-

[3] In this report, there are no reasons indicated as to why the claimant did not have the option of back surgery.

ray on his left knee.  (Tr. 124)  According to Dr. Helen Winer-
muram, the only abnormality found was a tibial tuberosity irregu-
larity, which was likely due to an old injury or Osgood-Schlatter
disease.  (Tr. 124)

On October 5, 2006, the VA Medical Center performed an MRI
on the left knee.  (Tr. 122)  According to Dr. Kenneth Buck-
walter, the MRI revealed an anterior cruciate ligament tear, a
tear of the posterior horn of the medial meniscus, fragmentation
of the tibial tubercle with findings suggestive of micromotion,
and a small loose body within the anteromedial joint space.  (Tr.
123)

On November 15, 2006, Dr. Haville, Connolly's chiropractor,
completed a Physical Capacities Evaluation.  (Tr. 121, 267)  He
indicated that Connolly could sit for less than an hour at a time
and for no more than three hours in an eight-hour day and could
walk and stand for less than an hour at a time or for less than
one hour in an eight-hour day.  (Tr. 121, 267)  He also reported
Connolly could lift up to five pounds occasionally, never could
carry any weight, could not use hands or feet for pushing and
pulling, and could occasionally bend, squat, crawl, climb, and
reach.  (Tr. 121, 267)  Dr. Haville also concluded that Connolly
never should be involved with activities involving unprotected
heights, being around moving machinery, exposure to marked
changes in temperature and humidity, and exposure to dust, fumes,
and gases.  (Tr. 121, 267)

On May 25, 2007, Dr. Mark Webster performed surgery on

Connolly's left knee, which removed all loose bodies from the knee. (Tr. at 268) Connolly was instructed that he could weight bear as tolerated and take Vicodin for pain. (Tr. 268)

The ALJ denied benefits in a written decision on January 25, 2008. (Tr. 31-39) The ALJ determined under step one that Connolly had not engaged in any substantial gainful activity since the alleged onset of February 5, 1998. (Tr. 33) The ALJ found that Connolly had the following severe impairments: degenerative disc disease and left knee impairment with surgery. (Tr. 33) However, the ALJ found that Connolly did not have an impairment or combination of impairments of listing-level severity; Connolly lacked the significant and persistent neurological abnormalities that Listing §1.04 requires; and there was no evidence of an inability to ambulate effectively according to Listing §1.02. (Tr. 34) Therefore, the ALJ concluded Connolly had the RFC to perform light exertional work. (Tr. 34) The ALJ determined Connolly was able to perform his past relevant work as both a telemarketer and a telephone solicitor, as well as a significant number of other jobs consistent with his medical impairments, age, education, previous work experience, and residual functional capacity. (Tr. 38) Therefore, the ALJ determined Connolly was not disabled and denied benefits. (Tr. 38)

After the Appeals Council denied Connolly's request for review, Connolly filed a timely civil action seeking review of the Commissioner's final decision. Connolly is contesting the ALJ's determination that he did not meet the criteria specified

in Listing §1.04 and Listing §1.02 and also is arguing that the
ALJ should have given greater weight to the evidence presented by
his chiropractor, Dr. Haville.

Discussion

The standard of judicial review of an ALJ's finding that a
claimant is not disabled within the meaning of the Social Secu-
rity Act is limited to a determination of whether those findings
are supported by substantial evidence.  42 U.S.C. §405(g) ("The
findings of the Commissioner of Social Security, as to any fact,
if supported by substantial evidence, shall be conclusive.");
*Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005); *Lopez ex
rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  Sub-
stantial evidence is defined as "such relevant evidence as a
reasonable mind might accept to support such a conclusion."
*Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28
L.Ed.2d 852, (1972) (*quoting Consolidated Edison Company v. NRLB*,
305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed.2d 140 (1938)).
*See also Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)
(stating same); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir.
2002) (stating same).  An ALJ's decision must be affirmed if his
findings are supported by substantial evidence and if there have
been no errors of law.  *Rice v. Barnhart*, 384 F.3d 363, 368-69
(7th Cir. 2004); *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir.
2002).  However, "the decision cannot stand if it lacks eviden-
tiary support or an adequate discussion of the issues."  *Lopez*,
336 F.3d at 539.  At a minimum, an ALJ must articulate his

10

analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. **Scott**, 297 F.3d at 595; **Diaz v. Chater**, 55 F.3d 300, 307 (7th Cir. 1995); **Green v. Shalala**, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." **Zurawski v. Halter**, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." **Young v. Barnhart**, 362 F.3d 995, 1002 (7th Cir. 2004) (*quoting* **Scott**, 297 F.3d at 595). *See also* **Hickman v. Apfel**, 187 F.3d 683, 689 (7th Cir. 1999)(*citing* **Sarchet v. Chater**, 78 F.3d 305, 307 (7th Cir. 1996) for same proposition).

Disability insurance benefits and supplemental security income are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable

> to engage in any substantial gainful activity
> by reason of any medically determinable phys-
> ical or mental impairment which can be ex-
> pected to result in death or which has lasted
> or can be expected to last for a continuous
> period of not less than 12 months.

> 42 U.S.C. §423(d)(1)(A)

The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. 20 C.F.R. §404.1520. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. §404.1520(b). If he is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. 20 C.F.R. §401, pt. 404, subpt. P, app. 1. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ next reviews the claimant's "residual functional capacity" (RFC) and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he is not disabled. 20 C.F.R. §404.1520(e). However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work

12

exists in the national economy.  42 U.S.C. §423(d)(2); 20 C.F.R. §404.1520(f), §416.920(f).

Connolly objects to the ALJ's decision, claiming his knee and spine impairments meet the required listings in step three of the ALJ's analysis.  At step three, the claimant must establish that his severe impairments meet one of the impairments listed in the regulations.  20 C.F.R. §401, pt. 404, subpt. P, app. 1.  If an impairment does, then it is acknowledged by the Commissioner to be conclusively disabling.  In order to meet a listed impairment, the claimant must establish, with objective medical evidence, all of the specified medical criteria, or findings equal in severity to all of the criteria, of a listing.  20 C.F.R. §§404.1525(c)(3), 404.1526(a).  The claimant bears the burden of proving that his condition meets or equals a listing, and this burden includes establishing that all of the identified criteria in a listing are present.  *See **Sullivan v. Zebley***, 493 U.S. 521, 531-32, 110 S.Ct. 885, 891-92, 107 L.Ed.2d 967 (1990)(applying this notion).

Connolly first asserts that his spine impairment met Listing §1.04 for disorders of the spine, which provides:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> > A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with

13

> associated muscle weakness or muscle
> weakness) accompanied by sensory or
> reflex loss and, if there is involvement
> of the lower back, positive straight-leg
> raising test (sitting and supine)[.]

> 20 C.F.R. Part 404, subpt. P, app. 1,
> §1.04(A).[4]

In this case, the ALJ concluded that Connolly had degenerative disc disease of the spine but also noted that this severe impairment did not meet the criteria of Listing §1.04. He reasoned that Connolly lacked the significant and persistent neurological abnormalities that this listing requires. The ALJ found no evidence in the record of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate effectively. In order for an ALJ's decision to stand, there must be sufficient evidence and reasoning for his decision to deny benefits.

The ALJ did not provide sufficient evidence for his determination on this point. The ALJ neither discussed medical evidence supporting his position nor evidence opposing his position. Rather, he simply named the relevant listing as Listing §1.04 and gave a list of the requirements that Connolly did not meet.[5] An ALJ does not need to discuss every shred of evidence in the record. *Zurawski*, 245 F.3d at 888. However, in his discussion of Connolly's spine impairment, the ALJ failed to discuss *any* evidence. Without even a minimum articulation of his analysis of

---

[4] §§1.04(B) and (C) are not at issue in this case. (Pltf. Br. at p. 3)

[5] In the decision, the ALJ stated, "[H]e lacks the significant and persistent neurological abnormalities that this listing requires. There is no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate effectively." (Tr. 34)

the evidence, this court cannot trace the path of the ALJ's reasoning to be assured that he considered the important evidence. *See Scott*, 297 F.3d at 595 (holding that the ALJ must build an accurate and logical bridge from the evidence to his conclusion so that the reviewing court may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review). By contrast, there is much evidence in the record that might support the opposite conclusion, which would show that Connolly may have met the requirements of Listing §1.04. For example, on January 12, 2004, a state agency physician determined that Connolly had decreased range of motion throughout the cervical and lumbar spine. On May 4, 2004, an MRI taken at the VA Medical Center showed there was mild multilevel degenerative disc disease throughout Connolly's lumbar spine and a small left-side disc protrusion, which was likely causing some mass effect on the left L5 nerve root. Finally, on September 27, 2004, a physician at the VA Medical Center discovered mild forminal stenosis. Hence, the ALJ did not provide minimal articulation, much less substantial evidence, for his determination that Connolly's severe impairment did not meet the requirements of Listing §1.04.

Secondly, Connolly contends that his knee impairment met the requirements of Listing §1.02, which provides:

> 1.02 *Major dysfunction of a joint(s) (due to any cause):* Characterized by gross anatomical deformity (e.g. subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal

> motion of the affected joint(s), and findings
> on appropriate medically acceptable imaging
> of joint space narrowing, bony destruction,
> or ankylosis of the affected joint(s).  With:
>
>> A. Involvement of one major peripheral
>> weight-bearing joint (i.e., hip, knee,
>> or ankle), resulting in inability to
>> ambulate effectively, as defined in
>> 1.00B2b[.]
>
> 20 C.F.R. pt. 404, subpt. P, app. 1, §1.02.[6]

The ALJ concluded that Connolly had severe left knee impair-
ment but that the impairment did not meet the requirements of
Listing §1.02.  He found no evidence of an inability to ambulate
effectively.  The ALJ looked at an MRI of Connolly's left knee
dated October 5, 2006, and an arthroscopy report dated May 25,
2007, to make his determination.  The MRI showed an interior
cruciate ligament tear, a tear of the posterior horn of the
medical meniscus, fragmentation of the tibial tubercle with
findings suggestive of micromotion, and a small loose body within
the anteromedial joint space.  The arthroscopy report showed that
Connolly had loose body removal from his left knee and that he
was discharged with weight bearing as tolerated.  The ALJ con-
cluded from these reports that there was no objective evidence
that Connolly's left knee impairment resulted in an inability to
ambulate effectively.

---

[6] An "inability to ambulate effectively" is defined as an extreme limitation
of the ability to walk that interferes very seriously with an individual's
ability to initiate, sustain, or complete activities.  20 C.F.R. pt. 404P
§1.00B2b(1).  It requires a limitation so serious that it does not permit
ambulation without the use of a hand-held assistance device limiting the use
of both upper extremities, such as a walker, two crutches, two canes, or an
inability to walk a block at a reasonable pace on rough or uneven surfaces.
20 C.F.R. pt. 404P §1.00B2b(2).

The ALJ's determination regarding Listing §1.02 was supported by substantial evidence. In order for a claimant to meet the specified listing, all of the requirements must be met. Here, Connolly failed to produce evidence showing an inability to ambulate effectively. Both pieces of evidence pointed to by the ALJ, as well as copious other pieces of evidence in the record, disprove this requirement. The ALJ adequately explained his reasoning that evidence in the record failed to show an inability to ambulate effectively. *See Scott*, 297 F.3d at 595 (holding that the ALJ must build an accurate and logical bridge from the evidence to his conclusion so that the reviewing court may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review). Because the ALJ did discuss the relevant evidence in the record and pointed out that this evidence did not indicate that Connolly was unable to ambulate effectively, an objective and reasonable mind can follow the ALJ's reasoning to his ultimate conclusion on this issue. Therefore, the ALJ provided substantial evidence for his determination on this issue.

Connolly next criticizes the ALJ for not giving the opinion of his chiropractor, Dr. Haville, sufficient weight. A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20

C.F.R. §404.1527(d)(2).  *See also* SSR 96-2p (same); **Schmidt v. Astrue**, 496 F.3d 833, 842 (7th Cir. 2007)(same); **Gudgel v. Barnhart**, 345 F.3d 467, 470 (7th Cir. 2003)(same).  The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." **Clifford v. Apfel**, 227 F.3d 863, 870 (7th Cir. 2000) (*quoting* **Scivally v. Sullivan**, 966 F.2d 1070, 1076 (7th Cir. 1992)). *See also* C.F.R. §404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). Inconsistencies in a treating physician's opinion, whether conflicting internally or with other substantial evidence in the record, may justify denying the opinion controlling weight.  20 C.F.R. §404.1527(c)(2); **Clifford**, 227 F.3d at 871.  *See, e.g.,* **Schmidt,** 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for re-editing or rejecting evidence of disability."); **Latkowski v. Barnhart**, 93 Fed. Appx. 963, 969 (7th Cir. 2004)(same).

However, the opinion of a chiropractor is not entitled to receive added or controlling weight, because chiropractors are not among the identified licensed physicians considered to be "acceptable medical sources."  20 C.F.R. §§404.1513(a)(1)-(5), 416.913(a)(1)-(5), 404.1527(d)(2).  Although Dr. Haville did examine and treat Connolly on a number of different occasions,

his statements were not entitled to receive controlling weight because, according to the regulations, chiropractors are not listed as medical sources for this type of determination. Also, there were no medical reports that necessarily supported the chiropractor's opinions. The entirety of Dr. Haville's evidence consisted of two food stamp eligibility forms and a Physical Capacities Evaluation form, and none of these forms were supported by any medical records or diagnosis. Therefore, the ALJ had good reason for giving a lower weight to Dr. Haville's opinions.

Connolly further criticizes the ALJ for placing excessive weight on the opinions of state agency doctors who never examined Connolly in person and did not see his last MRI, and for playing doctor. While an ALJ is not bound by the opinion of a state agency physician, according to the regulations an ALJ "must consider findings" made by state agency physicians as opinion evidence. 20 C.F.R. §404.1527(f)(2)(i). In making a determination, "an ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion." *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982). The ALJ must provide substantial evidence to support his decision to place greater weight on a state-agency physician rather than a treating physician. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (upholding ALJ's decision to discount treating physician's determinations because they were based on the claimant's subjective complaints rather than objective evidence); *Skarbek v. Barnhart*,

390 F.3d 500, 504 (7th Cir. 2002) (upholding ALJ's decision to discount treating physician's finding that claimant had limited range of motion because it was not supported by x-rays or other medical evidence).

The ALJ's decision to accord greater weight to the determinations of the state agency physicians and other treating physicians than he did to the chiropractor's determination was reasonable. This is illustrated by the evidence used in making his Listing §1.02 determination. The ALJ used the MRI on Connolly's knee dated May 5, 2004, which Connolly claims was left out of the state agency physicians' determinations, to support his conclusion that Connolly did not meet Listing §1.02. Regardless of how much weight the ALJ allegedly placed on the evidence brought by the state agency physicians, it is evident that the ALJ gave consideration to all of the more significant evidence, not just that provided by state physicians. Also, in his March 7, 2007 decision, the ALJ provided substantial evidence and reasoning for placing greater weight on the state agency physicians' opinions. The ALJ explained that this evidence was not inconsistent with other substantial evidence of the record. (Tr. 26)

However, ALJs "must be careful not to succumb to the temptation to play doctor" or substitute themselves as doctors by making medical determinations. *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990); *Metzger v. Astrue*, 263 Fed. Appx. 529, 532 (7th Cir. 2008) (*citing Scivally*, 966 F.2d at 1077). *See also Clifford,* 227 F.3d at 870 (holding that an ALJ must not substi-

tute h[is] own judgment for a physician's opinion without relying on other medical evidence or authority in the record). Since an ALJ "is not a doctor, he should avoid commenting on the meaning of a test or clinical x-ray when there has been no supporting expert testimony." *Whitney*, 695 F.2d at 788. When an ALJ impermissibly "play[s] doctor" by failing to address relevant medical evidence, the ALJ's decision shall be reversed. *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). *See also Clifford*, 227 F.3d at 870 (reversing because ALJ disregarded treating physician's opinion that the claimant had arthritis without citing any conflicting evidence in the record); *Hayes v. Railroad Ret. Bd.*, 966 F.2d 298, 303 (7th Cir. 1992)(reversing because ALJ disregarded "overwhelming corroborating medical evidence" of claimant's disability).

Here, the ALJ failed to address relevant evidence in his discussion of whether Connolly met the Listing §1.04 requirements. As in *Hayes*, leaving out important evidence can be deemed playing doctor. In the record, several reports show Connolly possibly met the requirements under Listing §1.04. For example, on January 12, 2004, a state agency physician determined that Connolly had decreased range of motion throughout the cervical and lumbar spine. On May 4, 2004, an MRI taken at the VA Medical Center showed there was mild multilevel degenerative disc disease throughout Connolly's lumbar spine and a small left-side disc protrusion, which was likely causing some compression on the left L5 nerve root. Finally, on September 27, 2004, a physician at

the VA Medical Center discovered mild forminal stenosis.  The ALJ
did not discuss any of this evidence while making his determina-
tion that Connolly did not meet the requirements of Listing
§1.04.  Even though it is unclear whether Connolly has met the
requirements of Listing §1.04, the ALJ did not provide any
evidence for his determination on that issue.  His decision
simply stated that Connolly did not meet the requirements of the
listing and gave a list of problems on which the ALJ found "no"
evidence in the record.  However, there was at least some evi-
dence in the record, ignored by the ALJ and discussed above, that
is relevant to whether Connolly's spine impairment meets Listing
§1.04.

On remand, the ALJ must provide a more in-depth discussion
of whether Connolly's spine impairment meets Listing §1.04.  In
undertaking a new step three determination regarding Listing
§1.04, the ALJ must consider all of the important evidence and
explain why the evidence is discounted.

————————————————

For the foregoing reasons, the decision of the Commissioner
is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C.
§405(g).  On remand, the ALJ is directed to reevaluate Connolly's
claim consistent with this opinion and provide sufficient evi-
dence for his determination.

ENTERED this 14th day of September, 2009

s/ ANDREW P. RODOVICH
United States Magistrate Judge